HOPE v. HOPE. (No. 7402.)

(Court of Civil Appeals of Texas. Dallas. June 19, 1915.)

DIVORCE ☞133 — ABANDONMENT — AGREED SEPARATION—EVIDENCE.

Evidence, in an action for divorce, *held* to show, not an agreed separation, but a voluntary abandonment by the wife, without fault of the husband, merely acquiesced in by him, entitling him to divorce.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 446–448; Dec. Dig. ☞133.]

Appeal from District Court, Kaufman County; F. L. Hawkins, Judge.

Action by J. P. Hope against Maud Hope. From an adverse judgment, plaintiff appeals. Reversed and rendered.

Wynne & Wynne, of Kaufman, for appellant.

RAINEY, C. J. Appellant, J. P. Hope, sued the appellee, Maud Hope, for divorce. After alleging his bona fide residence in this state, and in Kaufman county, for more than 12 months, and the marriage of Maud Hope and himself, he further alleged that she had voluntarily abandoned, without cause, his bed and board for more than three years. The appellee did not appear and answer plaintiff's petition. The court heard evidence and denied plaintiff's plea for divorce. He appeals from the judgment.

The evidence adduced on the trial, as shown by the statement of facts, is:

J. P. Hope, the plaintiff, testified:

"I am the plaintiff in this cause. The defendant and myself were married on the 28th day of January, 1910. I was 21 years of age at the date of the marriage. We lived together as man and wife until the 10th day of September, 1910. We were married in Kaufman county, Tex. During the time that we lived together as man and wife I was kind and affectionate toward the defendant, and endeavored to make her a good husband. She did not seem to like my people, and wanted me to move away; she was very jealous of me, and quarreled a great deal. She would not assist me, and did not seem to care whether we got along or did any work or not. She had threatened to leave me. On the 10th day of September, 1910, she asked me to take her over to her father's on a visit.

I told her that I would do it, so I hitched up the horse to the buggy, and she packed a grip and we drove over to her father's. On the way over there she told me that she was not going to live with me any more. I asked her to live with me, and she told me that she did not know whether she would or not. I did not know at the time she asked me to take her to her father's house that she intended to leave me. She told me, before I left her at her father's house, that she would let me know before the next Saturday whether or not she would live with me; that, if she did not write me to come over after her, she would not live with me. I left her with that understanding, asking her to live with me, and expecting her to return or to write me to come over after her. I wanted to live with her at that time. * * * Yes, sir; I took her over to her father's house. She asked me to do so. She told me that she would not live with me. She told me that she would write me by Saturday whether to come over there after her or not. If she did not write for me to come after her, I was to understand that she would not live with me. I did not hear from her, so I went out close to Ft. Worth, Tex., and visited my uncle out there. On the Saturday afternoon, after I left home, she came over to our house with her father. I was not present. She told my mother that she had come after her things, and that she did not intend to live with me any more. Her father told my mother in my wife's presence that she should not live with me any more, and that if I came around to their place to see her or after her, he would kill me. I did not go. She told me at the time I left her at her father's house that she would write me whether to come after her or not. She did not write for me to come after her. I had asked her to reconsider. Q. It was sort of an agreed separation was it not, Mr. Hope? A. Well, you might call it that. I left home before they came over there, and without waiting to see if she would write. I did not know they were coming. I have not seen her since that time I took her over to her father's house. * * * I heard that she had moved to West Texas. Later they moved to Florida, or some other state, and then they moved back to Wood county, Tex. I have never heard from her directly; I just heard from her through the neighbors. It has been four years since I lived with her or had anything to do with her. There were no children by the marriage. It was agreed that I was to go over after her, if she wrote me."

Mrs. N. A. Hope, being sworn, testified:

"I am the mother of J. P. Hope. I know the defendant. They were married in 1910, and they lived together a few months. The defendant did not seem to care very much about the plaintiff. The plaintiff was good to her all the time. She seemed jealous of the plaintiff, and did not try to help him out any. She would not work, and just quarreled about all the time. She went for a visit to her father's. I did not know that she intended to leave the plaintiff until he came back home and told me that she had said that she would not live with him any more. He said that she had agreed to let him know before Saturday whether to come back after her or not. He stated that he was going back after her, if she let him know, but that, if she did not let him know, he was to understand that she would not live with him any more. He did not hear from her. He left home Saturday morning and went to Ft. Worth, Tex., on a visit. She came to our house on Saturday afternoon, late, and asked to get her clothes. Her father was with her. She stated that she did not intend to live with my son any more. Her father stated to me in her presence that, if my son came around their house or to see his wife that he, the father, was going to kill him. They left my house, and I have never seen them since. I heard that they had moved out of the state. It has been about four years since they left this country, and my son has not lived with his wife or heard from her since they separated."

J. P. Hope, recalled, testified:

"I had agreed to go back after my wife and would have gone back after her. I wanted to live with her. I do not want to live with her now. I think that her actions have rendered our further living together as man and wife entirely insupportable. I know that I will never live with her any more. I have lived in Texas for 24 years and in Kaufman county for more than 10 years. I am a bona fide inhabitant of the state of Texas."

As suggested by counsel for appellant the trial court may have concluded from the evidence that there was an agreed separation. Appellant, while being examined, was asked by the court this question, "It was sort of an agreed separation, was it not?" and he answered, "Well, you might call it that." This answer does not necessarily mean that there was an agreement between himself and wife to separate, but all the evidence negatives such not to be the fact.

In the case of Besch v. Besch, 27 Tex. 390, where the husband had abandoned the wife, the court, in reviewing the case, said:

"The fact that a husband shall have left his wife for three years with the intention of abandonment is made by the statute a specific cause of divorce. It is immaterial what were the circumstances attending the separation, if the wife is in no manner chargeable with either by act or consent. That the separation was not accompanied by wanton acts of outrage or cruelty on the part of the husband towards her, is of no importance. It is the fact solely of his separation from her for the requisite length of time, with the continuing intention on his part, during such time, not to perform his matrimonial obligations, which entitled her to a rescission of their matrimonial contract."

The evidence of the appellant shows that he was in no way the cause of appellee leaving his bed and board, and that he was willing to live with her. It is also shown that she voluntarily abandoned him with the intention of not longer living with him as his wife. The appellant having done no act to cause her to leave him, he would be entitled to a judgment granting him a divorce. If there was a mutual understanding between them that they would separate and live apart, of course the law would not sanction it by granting a divorce to either party. But where the wife, as here indicated by the evidence, is jealous, quarrelsome, not willing to aid her husband, and generally disagreeable, and the husband merely acquiesces in her voluntarily leaving him, but still being willing to live with her, such would not prevent his being entitled to a divorce.

The evidence failing to show an agreed separation on the part of appellant the judgment is reversed, and judgment here rendered for appellant.